JUSTICE RICE,
specially concurring.
¶78 I concur with the holding of the Court on all issues herein, but disagree with the Court’s conclusion that the District Court erred in *474 allowing the results of the preliminary alcohol screening test or preliminary breath test (PAST or PBT) as evidence in the trial, and dissent therefrom.
¶79 First, I disagree with the Court’s interpretation of the Strizich decision. The Court characterizes Strizich as holding that PAST results suffer inherent unreliability as a matter of law and then affirms that decision. See ¶¶ 48 and 58. This characterization of Strizich, in my view, is not entirely accurate. Strizich made no finding of inherent unreliability.
¶80 The more accurate view is that Strizich did not hold that the PAST was inherently unreliable as a matter of law, but rather, that it was inadmissible as a matter of law. There is brief language in the opinion which may cause some confusion, but a careful reading demonstrates this point. First, the Strizich Court explained that §61-8-404, MCA, provided that results from post-arrest tests were admissible as evidence in a DUI trial, but that, in direct contrast, § 61-8-409, MCA, only provided that the PAST may be used in determining whether probable cause exists for an arrest, observing “[t]here is no suggestion in § 61-8-409, MCA, that the results of a PBT are admissible as substantive evidence to establish a person’s guilt.” Strizich, 286 Mont. at 11, 952 P.2d at 1371. The Court noted that the legislative history was consistent with this statutory language.
¶81 The Strizich Court then noted that there were reasons for this “legislative decision.” The Court quoted briefly from expert witnesses who had testified that the test is reliable in controlled situations, but that “variances” could occur, depending upon environmental factors. The Court concluded that the test was an “estimate” and restricted to probable cause determinations by the governing statutes. Thus, the Court reasoned that a “legislative decision” had prohibited the use of the evidence at trial, and that this decision was supported by the trial record. It did not hold that the trial record had conclusively demonstrated that the test was inherently unreliable as a matter of law.
¶82 The 1997 Legislature changed this “legislative decision” by enacting Senate Bill 106, and thereby revised the very statutes the Court had relied upon in Strizich. Senate Bill 106 included the PAST within the list of tests set forth in § 61-8-404, MCA, as admissible at trial, and struck the language in § 61-8-409, MCA, which had referenced its use for probable cause determinations. See Chapter No. 88, Laws of Montana (1997). While reliability of the PAST may have been addressed during legislative hearings, the Legislature itself made *475 no attempt to pre-determine that such evidence was rehable in every instance any more than it had done so for other DUI-related tests. It simply removed the statutory impediments to admissibility which the Court had pointed out in Strizich. In short, the 1997 amendments provided that the PAST was “admissible,” but did not insulate the test from foundational challenges, including reliability.
¶83 Prior to trial, Weldele challenged the Legislature’s actions, arguing in his motion in limine that the solons’ attempt to insert this evidence in a trial was invalid because “[t]he legislature cannot make the PBT sufficiently reliable to be admissible simply by saying it is.” The Defendant was absolutely correct in this statement, but the statement is not an accurate reflection of what the Legislature did. It did not legislate reliability, but simply repealed the statutory declaration that the evidence was inadmissible as a matter of law.
¶84 Ruling on Weldele’s motion in limine, the District Court called it exactly right: “The language of these [1997] statutory revisions clearly permits the use of the PBT results in trial. The reliability of the PBT may be established at trial.” (Emphasis added.) The District Court thus acknowledged that the statutory impediments to admissibility relied on in Strizich had been removed, but that reliability remained an issue to be determined in the trial.
¶85 At trial, the State provided foundational evidence only in regard to the machine’s certification and the officer’s training, and then offered the test results for introduction. This was Weldele’s opportunity to challenge the science underlying the PAST, but he failed to do so. Instead, he merely renewed his objection that the State had failed to provide full discovery and should be prohibited from using the evidence for that reason, which is the fourth issue resolved by the Court’s opinion herein. Reliability of the PAST was not challenged at trial, and thus, a record was not made on that issue, either by the Defendant or by the State. This is sufficient reason by itself to affirm the decision of the District Court, and this Court should do so on that basis, and stop there.
¶86 Instead, the Court embarks on, in my opinion, a quixotic quest to determine reliability of this evidence on its own. Lacking any record on this issue, the Court nonetheless decides the issue by (1) analyzing the record in the Strizich case, and (2) analyzing the legislative history of the 1997 amendments. See ¶¶ 52-54. I respectfully submit that by doing so the Court has engaged in an inappropriate mode of review. Neither party here was before us in Strizich, and even if they were, our duty is to decide this case on the record made before the District Court *476 here, not a record from a different case. Further, we do not determine the scientific reliability of evidence by a review of legislative history. In Hulse v. State, 1998 MT 108, 289 Mont. 1, 961 P.2d 75, the proper method of determining reliability was set forth in the Court’s extensive discussion of the admission of scientific evidence, there addressing the Horizontal Gaze Nystagmus test:
We agree that the HGN is not novel scientific evidence. Therefore, to determine the admissibility of HGN test results, a district court need not employ the Daubert standard. However, we continue to recognize that the relationship between alcohol consumption and nystagmus, the underlying scientific principle of the HGN test, is still beyond the range of ordinary training or intelligence. Therefore, a district court must still conduct a conventional Rule 702, M.R.Evid., analysis to determine the admissibility of HGN test results ....
... Clark ... illustrates that a foundation showing that the arresting officer is qualified to testify as to the HGN test results does not provide a sufficient basis for the officer to testify as to the scientific basis of the HGN test.
... Officer Kennedy was trained to administer the HGN test and, in fact, administered the HGN test on Hulse in accordance with this training, and, therefore, he was qualified to testify as to both his administration of the HGN test and his evaluation of Hulse’s performance. However, nothing in the evidence establishes that Officer Kennedy had special training or education nor adequate knowledge qualifying him as an expert to explain the correlation between alcohol consumption and nystagmus, the underlying scientific basis of the HGN test. Accordingly, we conclude there was insufficient foundation for the admission of evidence concerning the HGN test and the District Court abused its discretion when it summarily denied Hulse’s motion in limine
Hulse, ¶¶ 69-72 (underlining added). This proper determination of the reliability of the evidence did not occur here.
¶87 The District Court did not summarily deny all challenges to reliability, but simply, and correctly, denied Weldele’s argument that the statutes still preempted admission of PAST evidence, and held that the evidence could be introduced if it was shown to be reliable. At trial, Officer Goetz testified concerning his training and certification to operate a PAST instrument, and the purpose of the test. He did not, *477 however, testify concerning what Hulse describes as “the underlying scientific basis” of the PAST, and therefore, presented insufficient foundation for the admission of the test. However, no objection was raised by the Defendant to that insufficiency, no evidence was offered by the State concerning the scientific basis for the test and thus, no record was made. Thus, the District Court was given no opportunity to “conduct a conventional Rule 702, M.R.Evid., analysis” and rule on reliability. Hulse, ¶ 69.
¶88 Given this posture of the matter, we should decline to issue a ruling declaring PAST evidence to be unreliable as a matter of law and consider this issue at a time when we have a proper record before us.
I would affirm on that basis.
CHIEF JUSTICE GRAY joins the concurring opinion of JUSTICE RICE.